[No. 21097.    Department Two.    July 31, 1928.]

ELSA JOHANNA FEIGE, as *Executrix, Appellant,* v.
MANTROSE CORPORATION, *Respondent.*[1]

[1] SALES (12)—ORDER FOR GOODS—CONTRACTS BY CORRESPONDENCE—
EVIDENCE—SUFFICIENCY. An order for shellac "white, strictly
first class, not less than 4 lbs. rapid drying," was not an
order for "pure" shellac, where it was the custom of the trade
to use the word "pure" in ordering pure shellac, which would
be strictly first class and rapid drying in any event; and where
it appears that, in previous correspondence, the buyer had
indicated that the prices for pure were too high, and that he
would shortly be interested in a cheaper grade, which was
described in the order in question.

Appeal from a judgment of the superior court for
King county, Steinert, J., entered September 20, 1927,
upon findings in favor of the defendant, in an action
on contract, tried to the court. Affirmed.

*Carroll & Hoar, Leopold M. Stern,* and *D. D. Mote,*
for appellant.

*Bausman, Oldham & Eggerman,* and *Edw. L.
Rosling,* for respondent.

MAIN, J.—The plaintiff brought this action to re-
cover back the purchase price paid for ten barrels of
shellac shipped him by the defendant. In its cross-
complaint, the defendant sought recovery against the
plaintiff for a second shipment of shellac which he de-
clined to accept. While the action was pending, the
plaintiff George Feige died and Elizabeth Johanna
Feige, the executrix of his estate, was substituted as
party plaintiff. The cause was tried to the court with-
out a jury, and resulted in findings of fact and con-
clusions of law denying a recovery to the plaintiff and
sustaining a right of recovery in favor of the defend-

[1]Reported in 269 Pac. 495.

ant on its cross-complaint. Judgment was entered in favor of the defendant, from which the plaintiff appeals.

For convenience of statement the original plaintiff will be referred to as appellant. The respondent was a manufacturer and importer of shellac with its place of business in the state of New York. The appellant was a wholesaler and dealer in shellac and shellac varnishes in Seattle, this state. Generally speaking, shellac is of three kinds, pure shellac, shellac compound and shellac substitute. There are some other kinds, such as superfine and superb, but the controversy in the present case does not involve any of these.

About February 19, 1925, correspondence began between the parties with reference to the sale by the respondent to the appellant of shellac, they having had no previous dealings. This correspondence continued for a number of months, the respondent quoting prices from time to time and writing or telegraphing with reference to the condition of the trade in shellac. May 28, 1925, the respondent wrote the appellant that he was sending samples of A S O, super prima and superb, and stating prices. The letter concluded with the statement,

"We will make a special offering on four pound pure white shellac for delivery during July to the end of the year, any time you may need it at $2.30 per gallon, which would seem to be an attractive price."

June 1, 1925, the appellant responded to this letter with the statement that the prices of the samples were too high and concluded with the statement, "  . . . in 30 days I will be in the market for 25 Bbl 4 lb cut."

Prior to May 28, 1925, the respondent had written appellant a number of letters with reference to prices, ten or eleven in all, and every time, when referring to

pure shellac, the word "pure" was used. After receiving the appellant's letter of June 1, that word no longer appears in the correspondence, but reference is made to four pound cut white shellac. August 22, 1925, the appellant wrote the respondent a letter which contained this:

"I can use 20 bbls. of 4 lb. at 2.00 per gal. (white) but must be strictly first class not less than 4 lbs. and rapid drying."

Some time later, the respondent shipped the appellant ten barrels of four pound cut white shellac, but it was not pure. It was what would be classified as shellac compound. For this appellant paid. The shellac was not satisfactory to the trade, and on November 12 the appellant wrote the respondent that he was having trouble with the shellac in that his customers were claiming that it was not pure. November 29, 1925, the respondent responded to this letter as follows:

"Yours of the twelfth received. We did not ship you pure goods September nineteenth or October twenty-third but carried out your specifications August twenty-second. If you require pure can forward at once four pound white two dollars twenty cents."

The second ten barrels of shellac were shipped but, as above indicated, the appellant refused to receive them, and it is for the purchase price of these that the respondent sought recovery by its cross-complaint.

[1] The question is whether the order of the appellant for twenty barrels four pound at two dollars per gallon white meant "pure" shellac. If the appellant, in making that order, intended to contract for pure shellac, it would seem that there would have been no occasion to specify that it must be "strictly first class" and "rapid drying," as pure shellac would have these qualities without so specifying. As to what was meant in the trade by the use of four pound

cut white shellac, the evidence is in dispute. An officer of the respondent who did the corresponding testified that it was the custom of the trade, when ordering pure shellac, to use the word "pure," and that four pound cut white shellac, without the use of the word "pure," meant shellac compound. There was some evidence that tended to the contrary, but when the knowledge of the business as indicated by the testimony of the respective witnesses is considered, it clearly appears that the weight of the testimony is with the view that it was the custom of the trade, when ordering pure shellac, to use the word "pure." This was the view of the trial court, and we are in accord therewith.

Special mention is made of the telegram of November 29, where the respondent stated that it had not shipped pure shellac, but had carried out the appellant's specifications, and then said,

"If you require pure can forward at once four pound white two dollars twenty cents."

Clearly in this telegram the respondent was not using "four pound white" in itself to mean pure shellac, because in connection with these words the word "pure" is used.

The officer of the respondent whose testimony has already been referred to, when asked the question when and why his company ceased to quote pure shellac and commenced to quote compound, stated:

"On receipt of Mr. Feige's letter of June 1, 1925, in which he indicated that he did not intend to purchase pure shellac, but was only interested in a cheaper grade, and from that time on in my correspondence with Mr. Feige I did not refer to pure goods."

A witness called by the appellant testified on cross-examination that the word "white" did not necessarily mean pure shellac.

We think the trial court correctly held, considering the correspondence and the oral testimony, that the order which the appellant made, and which is in controversy, was an order for shellac combined and not for pure shellac.

The judgment will be affirmed.

FULLERTON, C. J., ASKREN, BEALS, and HOLCOMB, JJ., concur.